# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

TERRANCE J. LAVIGNE                                    CIVIL ACTION

VERSUS

CAJUN DEEP FOUNDATIONS, LLC, ET AL.          NO.: 12-00441-BAJ-SCR

## RULING AND ORDER

Before the Court is **Defendant Cajun Deep Foundations LLC's Motion for Summary Judgment (Doc. 46)**, filed by Defendant Cajun Deep Foundations, LLC ("Cajun Deep"), seeking an order from this Court dismissing Plaintiff Terrance J. Lavigne's ("Lavigne") claims against it, pursuant to Federal Rule of Civil Procedure 56.[1] Lavigne opposes the motion.[2] (Docs. 52, 85.) Cajun Deep filed a reply memorandum in response to Lavigne's memoranda in opposition. (Doc. 86.) Oral argument is not necessary. The Court has jurisdiction, pursuant to 28 U.S.C. § 1331.

---

[1] In support of its Motion for Summary Judgment, Cajun Deep relies upon the pleadings; a Statement of Undisputed Facts; Lavigne's November 11 and December 17, 2013 depositions; Lavigne's Original Charge of Discrimination; Lavigne's Amended Charge of Discrimination; the Equal Employment Opportunity Commission's Notice of Right to Sue; excerpts from the Equal Employment Opportunity Commission's investigative file; Lavigne's discovery responses; and Deep Cajun's records.

[2] In support of his memoranda in opposition, Lavigne relies upon his response to Cajun Deep's Statement of Undisputed Facts; his Complaint; his November 11 and December 17, 2013 depositions; his Original Charge of Discrimination; his Amended Charge of Discrimination; his declaration; his brother's declaration; and Deep Cajun's records.

I.    **Background**

This is an employment discrimination action brought by Lavigne against his

former employer, Cajun Deep, pursuant to Title VII of the Civil rights Act of 1964, 42

U.S.C. § 2000, *et seq.* ("Title VII") and the Louisiana Employment Discrimination Law,

La. R.S. § 23:301, *et seq.*  Lavigne initially filed this lawsuit pro se.[3]  Lavigne's

Complaint alleges that Cajun Deep unlawfully discriminated against him on the basis

of his race (African American).   Specifically, Lavigne alleges that he was denied

promotional opportunities, treated "less favorably than white male employees who

violated the same or similar policies," and wrongfully terminated for alleged violations

of company policy.   (Doc. 1, pp. 2-3.)   Lavigne further alleges that Cajun Deep

retaliated against him: (1) for requesting a promotion and higher compensation; (2) for

opposing "unfair employment practices which violate Title VII"; and (3) due to its

"concern that [Lavigne] could alert OSHA . . . regarding incidents reportable to it

which were not reported or otherwise 'covered up.'" (Doc. 1. p. 3.)  Accordingly, Lavigne

seeks "injunctive relief," back pay, damages, attorneys' fees, and costs.  (Doc. 1, p. 3.)

Cajun Deep denies all liability.  (Doc. 6.)

As to the instant motion, Cajun Deep seeks an order from this Court dismissing

Lavigne's claims, pursuant to Federal Rule of Civil Procedure 56.  In support of its

motion, Cajun Deep argues that Lavigne's Amended Charge of Discrimination

("Amended Charge") does not relate back to his Original Charge of Discrimination

---

[3] Lavigne filed his Complaint on July 24, 2012. (Doc. 1.)  The Court granted counsel's motion to enroll on behalf of Lavigne on February 22, 2013.  (Doc. 11.)

("Original Charge"). Specifically, Cajun Deep argues that Lavigne's Amended Charge raises new legal theories, namely wrongful termination and retaliation, that do not relate back to the allegations in his Original Charge. Accordingly, such claims are time-barred and must be dismissed as a matter of law. Cajun Deep further argues that Lavigne failed to exhaust seven of the claims made in his Complaint and/or such claims are time-barred. Accordingly, such claims must be dismissed as a matter of law. Finally, Cajun Deep argues that Lavigne has failed to point to sufficient evidence in the record to establish a prima facie case of discrimination on the basis of his race. Accordingly, Lavigne's claims must be dismissed as a matter of law.

In opposition, Lavigne argues that the claims in his Amended Charge relate back to the claims in his Original Charge. Lavigne further contends that he properly exhausted each of the claims made in his Complaint and/or such claims are not time-barred. Lavigne also argues that there is sufficient evidence in the record to establish a prima facie case of discrimination on the basis of his race. Specifically, Lavigne argues that there is sufficient evidence in the record to establish a prima facie case of disparate treatment, disparate compensation, failure to promote, wrongful termination, and retaliation. Accordingly, Lavigne requests the Court deny Cajun Deep's motion for summary judgment.

## II.    Undisputed Facts

According to the undisputed facts[4]:

1.    Lavigne was initially hired as a Laborer by non-party Cajun Constructors, Inc. on August 18, 2005, even though he had almost no experience in the field of construction.

2.    Less than two months later, Lavigne was promoted to Driller Helper and received a pay raise to $12.00 per hour.

3.    Plaintiff received two more raises in 2006 until he was earning $16.00 per hour when he was promoted to Leadman on October 26, 2006.

4.    In 2007, Plaintiff began working for Cajun Deep Foundations, was promoted to Drill Shaft Operator and his pay was raised that year until he was earning $19.00 per hour.

5.    Subsequently, Plaintiff was promoted to Drill Shaft Foreman on June 7, 2009 and received a pay raise to $20.00 per hour.

6.    In total, Plaintiff was promoted four (4) times and received six (6) raises in a little less than four (4) years of employment with Cajun Deep.

7.    Lavigne's first violation of company policy occurred on or about January 29, 2009.

---

[4] Pursuant to Local Rule 56.1, Cajun Deep submitted a statement of undisputed material facts with its motion for summary judgment. (Doc. 46-1.) Lavigne filed a response, in which he opposes a number of Cajun Deep's material facts. (Doc. 52-1.) Pursuant to Local Rule 56.2, certain material facts are deemed admitted for purposes of this ruling and order.

8.  Due to this violation of company policy, Lavigne was given a written notice of violation and discipline and given a three (3) day suspension without pay.

9.  The second violation of company policy occurred less than two (2) years later on or about February 7, 2011.

10. On that date, Plaintiff was operating an excavator whose boom struck the girder of the southbound I-310 bridge.

11. In this lawsuit, Lavigne reasserted the allegations that he first made in his Original Charge and Amended Charge.

12. Plaintiff claims that Cajun Deep discriminated against him in violation of Title VII.

13. Plaintiff has made no allegations that he was subjected to a hostile work environment in this case.

## III.   Standard of Review

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the moving party carries its burden of proof under Federal Rule of Civil Procedure 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Id.* The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

IV.    Analysis

A.    **Whether Lavigne's Amended Charge of Discrimination Relates Back to His Original Charge of Discrimination**

In support of the motion, Cajun Deep argues that Lavigne's Amended Charge does not relate back to his Original Charge. Specifically, Cajun Deep argues that Lavigne's Amended Charge raises new legal theories, namely wrongful termination and retaliation, that do not relate back to the allegations in his Original Charge. Accordingly, such claims are time-barred and must be dismissed as a matter of law.

In opposition, Lavigne argues that his wrongful termination and retaliation claims are not time-barred because such claims relate back to the allegations in his Original Charge. According to Lavigne, his wrongful termination and retaliation claims are based on "the same set of operative facts" contained in his Original Charge. (Doc. 52, p. 9.) Accordingly, Lavigne argues that his wrongful termination and retaliation claims relate-back to the claims in his Original Charge, and thus, must not be dismissed as time-barred.

Before an employment discrimination plaintiff may pursue his claims in federal court, he must exhaust his administrative remedies. *Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002). In order to exhaust his administrative remedies, a plaintiff must first file a timely charge of discrimination with the Equal Employment Opportunity Commission's (EEOC) and receive notice of right to sue. *Id.*

Under Title VII, a plaintiff must file a claim with the EEOC within 180 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1). However, in a "deferral" state

like Louisiana, this filing period is extended to 300 days if the complainant instituted

a complaint with a state or local agency with authority to grant or seek relief from such

practices. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 351 (5th Cir. 2001)

(citing 42 U.S.C. § 2000e-5(e)(1)); *Griffin v. City of Dallas*, 26 F.3d 610, 612 (5th Cir.

1994).[5]

Here, it is uncontested that the 300-day limitations period applies to Lavigne.

It is also uncontested that the last alleged discriminatory act occurred on March 22,

2011, the date Cajun Deep terminated Lavigne. (Doc. 46-3, p. 21.) Accordingly, the

300-day limitations period expired on January 16, 2012. Lavigne's Original Charge

was signed on August 6, 2011 and received by the EEOC on August 22, 2011. (Doc. 46,

p. 20.) Thus, it is uncontested that Lavigne's Original Charge fell well within the 300-

day limitations period.

Lavigne's Amended Charge was signed on March 21, 2012 (65 days after the

300-day limitations period expired) and received by the EEOC on March 22, 2012 (66

days after the 300-day limitations period expired). (Doc. 46-3, p. 21.) Thus, it is

uncontested that Lavigne's Amended Charge was untimely. Accordingly, Lavigne's

wrongful termination and retaliation claims are time barred unless those claims relate

back to the allegations in his Original Charge.

---

[5] A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 n. 1 (5th Cir. 1988). The Louisiana Commission on Human Rights ("LCHR") has been funded and operating since April 1994, making Louisiana a deferral state since that time. *See Lafort v Russell*, No. 96-3888, 1998 U.S. Dist. LEXIS 189, at *7, 1998 WL 12241, at *2 n.2 (E.D. La. January 12, 1998) (citing La.Rev.Stat.Ann. § 51:2233 (West Supp. 1997)); see also 29 C.F.R. § 1601.74.

The EEOC regulations provide, in relevant part, that an amended charge relates back to "the date the charge was first received" only if the amendment "clarif[ies] and amplif[ies] allegations made therein," or "alleg[es] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1610.12(b). Accordingly, the general rule is that amendments that raise a new legal theory do not relate back to an original charge of discrimination. *Manning v. Chevron Chemical Co. LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (citations omitted). This rule has an important policy justification: one of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them." *EEOC v. Shell Oil Co.,* 466 U.S. 54, 77, 80 (1984); *Manning,* 332 F.3d at 879. However, one narrow exception to the general rule provides that an amendment, even one that alleges a new theory of recovery, can relate back to the date of the original charge when the facts supporting both the amendment and the original charge are essentially the same. *Manning,* 332 F.3d at 879 (citations omitted). "The question is whether the employee *already included* sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination." *Id.* (emphasis in original).

Here, Lavigne's Original Charge alleges:

Since 2009, I have been working for the company as a Crew Supervisor . . . I have been subjected to unfair terms and conditions of employment because of my race (Black). On February 7, 2001, I [was] suspended for 3 days for striking an I-310 overpass with an excavator. I was also required to take a drug test. The white counterparts who have been

9

involved in similar accidents have not been suspended or required to take a drug test. I am also not receiving a Supervisor's pay even though I ha[ve] a supervising job. Other Supervisors of a different race have received pay increases because of their Supervisory tasks. I believe that I have been discriminated against because of my Race (Black) . . . because my white counterparts are treated favorably better under similar circumstances.

(Doc. 46-3, p. 20.) Lavigne's Amended Charge alleges:

. . . On March 22, 2011, I was wrongfully terminated for violating company policy, including (1) standing too close to an open excavation; (2) having an accident while operating heavy equipment; (3) my driving record; (4) Also, because I sought to be paid at the same rate as that of a job superintendent for the times I had already worked or would work, in the future, in that capacity. I believe I have been discriminated against because of my race, Black, and retaliated against for opposing unfair employment practices . . .

(Doc. 46-3, p. 21.)

### 1.    Lavigne's Wrongful Termination Claim

Lavigne first raised his wrongful termination claim in his Amended Charge, thus making this claim a new legal theory. *See Carter v. Target Corp.*, 541 Fed. Appx. 413, 419 (5th Cir. 2013) (alleging a new form of discrimination on an amended charge presents an entirely new legal theory.). However, raising a new legal theory in an amended charge is not always fatal. *Manning*, 332 F.3d at 878. (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("[t]he crucial element of a charge of discrimination is the factual statement contained therein.")); *see also EEOC v. Mississippi College*, 626 F.2d 477, 483 (5th Cir. 1980) ("[c]harges filed with the EEOC must be liberally construed because charging parties usually are unfamiliar with the technicalities of formal pleadings and are not assisted by an attorney."). As

noted in *Manning*, the issue not whether the employee adds any facts when he amends the charge, but whether the employee already included sufficient facts to put the employer on notice that the employee might have additional allegations of discrimination. *Id.* at 879.

Here, Lavigne alleged that he was "subjected to unfair terms and conditions of employment because of [his] race" and"suspended for 3 days for striking an I-310 overpass with an excavator." (Doc. 46-3, p. 20.) It is uncontested that Cajun Deep terminated Lavigne approximately five months before he filed his Original Charge, allegedly for committing unsafe acts and violating company policy. (Doc. 46-3, pp. 12-14.) In other words, Lavigne was terminated allegedly because of multiple unsafe acts and/or violations of company policy, including the incident described in his Original Charge. Thus, it cannot be said that Cajun Deep was unaware that Lavigne might have an additional allegation of wrongful termination.

In sum, the Court finds that Lavigne's wrongful termination claim "constitutes an unlawful employment practice[ ] directly related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(6). Accordingly, the Court finds that Lavigne's wrongful termination claim relates back to his Original Charge, and thus, is not time-barred. Accordingly, Cajun Deep's request that the Court dismiss Lavigne's wrongful termination claim on this basis is **DENIED**.

### 2. Lavigne's Retaliation Claim

Lavigne also raised his retaliation claim for the first time in his Amended Charge. Thus, this new theory of recovery is time-barred unless the Court finds that

Lavigne included sufficient facts in his Original Charge to put Cajun Deep on notice that he might have a retaliation claim.

A review of Lavigne's Original Charge reveals that Lavigne failed to check the "retaliation" box in the "[d]iscrimination based on" section of the charge form. (Doc. 46-3, p. 20.) The Fifth Circuit has held that a plaintiff's failure to check a box on an EEOC charge of discrimination is not always a fatal error. *See Sanchez*, 431 F.2d at 462 (finding that the plaintiff's failure to check the national origin box on her charge was a mere "technical defect or omission."). However, Lavigne's failure to mark in the "retaliation box" is an indication that his Original Charge does not contain factual allegations sufficiently related to a retaliation claim. *See Frazier v. Sabine River Authority Louisiana*, 509 Fed. Appx. 370, 374 (5th Cir. 2013); *Manning*, 332 F.3d at 876; *Carter*, 541 Fed. Appx. at 419.

In *Carter*, the plaintiff neither mentioned race nor marked the "race" discrimination box on her original charge. *Carter*, 541 Fed. Appx. at 419. Later, the plaintiff submitted an amended charge, in which she alleged racial discrimination. *Id.* The Fifth Circuit held that because the plaintiff's amended charge presented a new legal theory, and because the plaintiff failed to mention race or check the "race" discrimination box in her original charge, her racial discrimination claim did not relate back to her original charge. *Id.*

Similarly, here, Lavigne did not mark the "retaliation" box on his Original Charge; nor did he include facts related to a retaliation claim. While the court's scope of inquiry is not limited to the boxes checked, it is limited to that "which can

reasonably be expected to grow out of the charge." *Young v. City of Houston*, 906 F.2d

177, 179 (5th Cir. 1990).

In opposition, Lavigne argues that "discrimination encompasses retaliation."

(Doc. 52, p. 10.) In support of this argument, Lavigne cites to *Jackson v. Birmingham*

*Board of Education*, 544 U.S. 167 (2005). However, *Jackson* is inapplicable to the case

at bar.[6] Further, it is well established, that discrimination and retaliation claims are

distinct. *Frazier*, 509 Fed. Appx. at 374; *Bouvier v. Northrup Grumman Ship Systems,*

*Inc.*, 350 Fed. Appx. 917, 921 (5th Cir. 2009); *Randel v. U.S. Dep't of Navy*, 157 F.3d

392, 395 (5th Cir. 1998). For these reasons, Plaintiff's argument that discrimination

encompasses relation is unconvincing.

In sum, the Court concludes that Lavigne failed to put Cajun Deep on notice that

he might have a retaliation claim when he failed to check the "retaliation" box on his

Original Charge *and* when he failed to include any facts related to a retaliation claim.

Indeed, Lavigne points to nothing in the record that would account for his failure to

raise this new legal theory when he filed his Original Charge. Accordingly, the Court

concludes that Lavigne's retaliation claim does not relate back to his Original Charge,

and thus, is time-barred. As such, Cajun Deep's request that the Court dismiss

Lavigne's retaliation claim on this basis is **GRANTED**.

---

[6] *Jackson* is inapplicable for two reasons: (1) in *Jackson*, the plaintiff filed suit under 20 U.S.C. § 1681, et seq. ("Title IX"); whereas here, Lavigne seeks recovery under Title VII; and (2) Title IX is a broad prohibition against discrimination that includes retaliation; whereas retaliation under Title VII is a distinct legal theory. *See Jackson*, 544 U.S. at 175; *Frazier*, 509 Fed. Appx. at 374.

B.      **Whether Lavigne Administratively Exhausted the Claims in His July 24, 2012 Complaint**

In support of the motion, Cajun Deep argues that Lavigne failed to exhaust seven of the claims made in his Complaint. Specifically, Cajun Deep contends that Lavigne failed to include seven claims of disparate treatment, disparate compensation, failure to promote, wrongful termination, and retaliation in his Original Charge or Amended Charge. Thus, such claims were not properly exhausted and must be dismissed as a matter of law.

In opposition, Lavigne argues that he properly exhausted each of the claims alleged in his Complaint. According to Lavigne, such claims are sufficiently related to the allegations in his Original Charge and Amended Charge. Thus, such claims were properly exhausted and must not be dismissed on this basis.

In his Complaint, Lavigne alleges that he was: (1) treated less favorably than white male employees who violated the same or similar policies; (2) overlooked and/or denied promotion to superintendent, while similarly situated males were promoted to the position; (3) overlooked and/or denied the pay rate of Superintendent, while similarly situated males were paid at the pay rate of a Superintendent; (4) cited for a policy violation arising from an incident in which his action prevented Cajun Deep from making a costly mistake; (5) cited for a policy violation arising from a review of his motor vehicle records, while similarly situated males were treated more favorably; (6) retaliated against for seeking a promotion to Superintendent; and (7) retaliated against due to Cajun Deep's concern that he could alert OSHA about reportable

violations. (Doc. 1, p. 3.) As concluded above, Lavigne's retaliation claims are time-barred. Thus, the only question is whether Lavigne's remaining five claims are addressed in or reasonably related to Lavigne's Original Charge and Amended Charge.

It is well established that "[t]he 'scope' of a complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466. However, because the scope of an EEOC complaint is to be construed liberally, the Court must review Title VII claims broadly and not limit its review to the scope of the administrative charge itself, but consider the scope of the EEOC investigation which can "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, (5th Cir. 2006) (quoting *Sanchez*, 431 F.2d at 466); *see also Castro v. Tex. Dep't of Crim. Justice*, 541 Fed. Appx. 374, 379 (5th Cir. Tex. 2013) ("[w]e will not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation. Instead, we construe an EEOC complaint broadly but in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination.") (internal citations and quotations omitted).

Here, the Court concludes that Lavigne's remaining five claims reasonably grow out of his Original Charge and Amended Charge and the EEOC investigation that occurred. Indeed, a review of the record reveals that Cajun addressed each of these allegations in its position statement and subsequent responses to the EEOC investigator. (Doc. 46, pp. 1-3, 10-14.)

In sum, the Court concludes that Lavigne properly exhausting the remaining five claims made in his Complaint. Accordingly, Cajun Deep's request that the Court dismiss Lavigne's claims on this basis is **DENIED**.

C.  **Whether the Federal and State Law Claims Alleged by Lavigne in His July 24, 2012 Complaint are Time-Barred**

In support of the motion, Cajun Deep argues that any federal claims alleged by Lavigne that are based on events that occurred prior to October 2010 are time-barred, and must be dismissed as a matter of law. Cajun Deep also contends that any state law claims alleged by Lavigne that are based on events that occurred prior to January 2011 are time-barred, and must be dismissed as a matter of law.

In opposition, Lavigne generally argues that his federal and state law claims are not time-barred. Thus, such claims must not be dismissed on this basis.

1.  **Lavigne's Title VII Claims**

A discrimination charge is considered "filed" for purposes of 42 U.S.C. § 2000e-5 on the date the EEOC receives the charge, not the date the charged is signed or mailed.[7] *See Taylor v. Gen. Telephone Co. of the Southwest*, 759 F.2d 437, 441-42 (5th Cir. 1985). The date stamp on Lavigne's Original Charge indicates that it was received by the EEOC on August 22, 2011. (Doc. 46, p. 20.) As noted above, it is uncontested that the 300-day limitations period applies to Lavigne. Thus, Lavigne's federal law claims based on events that occurred 300 days before August 22, 2011, or before

_____

[7] By contrast, 29 C.F.R. § 1601.13 explicitly mandates that where a charge of discrimination is filed which includes an allegation under state law, the state law charges are to be forwarded to the appropriate local agency and these "[s]tate or local proceedings are deemed to have commenced on the date such document is mailed. . . ." 29 C.F.R. § 1601.13(a)(4)(i)(B).

October 26, 2010, are time-barred.[8]

## 2. Lavigne's Claims Under Louisiana Employment Discrimination Law

Generally, claims brought under the Louisiana Employment Discrimination Law

("LEDL") must be filed within one year of the last discriminatory act. However, the

LEDL suspends its one-year prescription period for up to six months during any

investigation by the EEOC or the Louisiana Commission on Human Rights. La. R.S.

§ 23:303(D).

Here, Lavigne filed his complaint on July 24, 2012. (Doc. 1.) Thus, Lavigne's

state law claims based on events that occurred eighteen months before July 24, 2012,

or before January 24, 2011, are time-barred.

Accordingly, Cajun Deep's request that the Court dismiss the federal and state

law claims alleged by Lavigne in his July 24, 2012 Complaint is **GRANTED IN PART**

and **DENIED IN PART**. As such, Lavigne's federal law claims based on events that

occurred before October 26, 2010, and state law claims based on events that occurred

before January 24, 2011 are **DISMISSED**.

## D. Whether Lavigne Has Established a Prima Facie Case of Discrimination on the Basis of His Race

In support of the motion, Cajun Deep argues that Lavigne has failed to point to

sufficient evidence in the record to establish a prima facie case of discrimination on the

---

[8] While Lavigne's argument in opposition is not entirely clear, to the extent Lavigne argues that the Court should consider discrete employment actions prior to October 26, 2010 under the "continuing violation" doctrine applicable to hostile work environment claims, the Supreme Court has rejected this argument. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

17

basis of his race. Accordingly, Lavigne's claims must be dismissed as a matter of law.

In opposition, Lavigne argues that there is sufficient evidence in the record to establish a prima facie case of discrimination on the basis of his race. Accordingly, his remaining claims must not be dismissed on this basis.

Title VII prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII intentional discrimination can be proven by either direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 F. 3d 572, 578 (5th Cir. 2003), *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). In order for evidence to be "direct," it must, if believed, prove the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted). Here, Lavigne has not presented direct evidence of discrimination. Accordingly, the Court shall employ the familiar burden-shifting framework created by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[9]

In order to overcome a motion for summary judgment on his remaining discrimination claims, Lavigne must first establish, by a preponderance of the evidence, a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 801-803. A prima facie case is established once the plaintiff has proved that he: (1) is a

---

[9] Louisiana state courts routinely look to federal jurisprudence in interpreting Louisiana's anti-discrimination laws; this Court will do the same. *See, e.g., Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002); *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 188 (La. 1999).

member of a protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class; or in the case of disparate treatment, show that others similarly situated were treated more favorably. *Id.*; *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). The prima facie case, once established, raises a presumption of discrimination, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Meinecke v. H&R Block*, 66 F.3d 77, 83 (5th Cir. 1995) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248. 254 (1981)). If the defendant satisfies this burden by proffering a non-discriminatory reason for the adverse employment action, the plaintiff must then create a genuine issue of material fact that either: (1) the defendants' reason is not true, but instead is a pretext for discrimination (pretext alternative); or (2) regardless of the nondiscriminatory reason, his race was also a motivating factor (mixed-motives alternative). *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citation omitted); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a question for the fact-finder. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (noting that once a Title VII case reaches the pretext stage, the sufficiency of the evidence test is applied)). Throughout, the ultimate burden of persuasion remains with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 142 (2000).

As concluded above, Lavigne's retaliation claim is time-barred. Accordingly, the Court's analysis shall be limited to Lavigne's disparate treatment, disparate compensation, failure to promote, and wrongful termination claims.

### 1. Lavigne's Disparate Treatment Claims

Disparate treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. *See Pacheco*, 448 F.3d at 787 (internal citations omitted). In such disparate treatment cases, proof and finding of discriminatory motive is required. *Id.*

In support of the motion, Cajun Deep concedes that Lavigne has met the first two elements of his prima facie case. Thus, the only remaining issues are whether Lavigne can establish that: (1) he was subjected to an adverse employment action; and (2) others similarly situated were treated more favorably.

### i. Lavigne's Three-Day Suspension for Working Near an Open Excavation Without Wearing a Harness

In his Complaint, Lavigne alleges that he was "cited for [a] policy violation arising from an incident wherein my action saved Cajun from making a very costly mistake. Others who were White males were not cited for the same action at the same time for which I was cited. The incident was being too close to an open hole." (Doc. 1, p. 3.) Lavigne's Complaint fails to identify the date that this incident occurred. However, a review of record indicates that the incident occurred on January 29, 2009. (Doc. 46-3, p. 12.) As noted above, however, Lavigne's federal law claims based on

20

events that occurred before October 26, 2010, and state law claims based on events that occurred before January 24, 2011, are time-barred. Thus, Lavigne's disparate treatment claim based on this event is **DISMISSED**.

> ii. **Lavigne's Three-Day Suspension and Cajun Deep's Requirement that Lavigne Undergo Drug Testing After Lavigne Struck the Girder of the Southbound I-310 Bridge with the Boom of an Excavator**

In his Complaint, Lavigne alleges that he was "cited for [a] policy violation arising from an accident involving heavy equipment" and that "[o]ther White males have had the same or similar accidents and were not held in violation of Cajun's policies." (Doc. 1, p. 3.) Lavigne's Complaint fails to identify the date that this incident occurred. However, a review of record indicates that the incident occurred on February 7, 2011, and that Lavigne's suspension and drug testing occurred on February 15, 2011. (Docs. 46-3, p. 2, 52-3, pp. 167-169, 177, 193, 215, 223.) Thus, Lavigne's disparate treatment claim based on such events is timely.

In support of the motion, Cajun Deep argues that Lavigne has failed to establish the fourth element of his prima facie case. Specifically, Cajun Deep contends that Lavigne has failed to identify similarly situated employees who were treated more favorably.

It is well established that the plaintiff's burden of proof in disparate treatment cases is to identify similarly situated employees whose circumstances, including their misconduct, was "nearly identical" to the plaintiff. *See Perez v. Tex. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 213 (5th Cir. 2005) (citing *Little v. Republic Ref. Co.*,

924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990)). Based on the evidence in the record, the Court concludes that Lavigne has sufficiently identified three White male employees who struck an overpass or bridge with heavy equipment, but were not suspended. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (noting that the Fifth Circuit's "nearly identical" standard is not synonymous with "identical."). Accordingly, the burden shifts to Cajun Deep to proffer a non-discriminatory reason for Lavigne's suspension.

In support of its argument, Cajun Deep contends that the employees identified by Lavigne were treated more favorably than Lavigne because they, unlike Lavigne, were not Drill Shaft Foreman and because their infractions, unlike Lavigne's infraction, did not involve operator error.[10] Based on the evidence in the record, the Court concludes that Cajun Deep has offered a sufficient non-discriminatory reason for Lavigne's suspension. Accordingly, Lavigne must create a genuine issue of material fact that either: (1) the defendants' reason is not true, but instead is a pretext for discrimination (pretext alternative); or (2) regardless of the nondiscriminatory reason, his race was also a motivating factor (mixed-motives alternative).

In opposition, Lavigne argues that the infractions committed by similarly situated employees were not caused by mechanical error, but rather, were caused by operator error. In support of his argument, Lavigne points to his November 11, 2013 deposition, in which he testified about the cause of his infraction and other infractions

---

[10] Cajun Deep contends, and the incident reports submitted by Cajun Deep purport to reflect, that the other employees' infractions were attributable to mechanical malfunction rather than operator error.

by similarly situated employees. (Doc. 52-3, pp. 171-177.) Lavigne also submitted evidence that the damage caused by his infraction was less severe than the damage caused by a similarly situated employee who struck the same bridge. (Doc. 84-4, pp. 54-72.) Accordingly, the Court finds that Lavigne has pointed to sufficient evidence in the record to create a genuine issue of material fact. Accordingly, Cajun Deep's request that the Court dismiss Lavigne's disparate treatment claims based on this event is **DENIED**.

As it relates to Cajun Deep's requirement that Lavigne undergo drug testing, Cajun Deep argues that drug testing is not an adverse employment action as defined by the United States Supreme Court. The Court agrees.

An "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Shackelford*, 190 F.3d at 407 (same). Here, Lavigne has failed to establish that Cajun Deep's requirement that he undergo a drug test on February 15, 2011 amounted to or led to an adverse employment action. Accordingly, Lavigne's disparate treatment claims based on this event are **DISMISSED**.

### 2. Lavigne's Disparate Compensation Claims

To state a prima facie claim for disparate compensation, a plaintiff must show that he was a member of a protected class and was paid less than a non-member for substantially the same job responsibilities. *Goring v. Bd. of Supervisors of La. State*

23

*Univ. & Agric. & Mech. College*, 414 Fed. Appx. 630, 633 (5th Cir. 2011) (citing *Taylor*

*v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008)).

In support of its motion, Cajun Deep concedes Lavigne is a member of a

protected class. Thus, the only remaining issue is whether Lavigne was paid less than

white employees for substantially the same job responsibilities.

### i. Cajun Deep's Failure to Compensate Lavigne for Supervisory Work

In his Original Charge, Lavigne alleges that he did not receive "a Supervisor's

pay even though [he had] a supervising job" and that "[o]ther Supervisors of a different

race [ ] received pay increases because of their Supervisory tasks." (Doc. 46-3, p. 20.)

Lavigne's Original Charge and Complaint fail to identify the dates Cajun Deep

allegedly failed to compensate Lavigne for supervisory work. However, a review of

record indicates that he received promotions on October 2, 2005, October 26, 2006, May

20, 2007, and June 7, 2009. (Doc. 46-3, p. 14.) It is not clear from the record which of

these promotions involved supervisory tasks. However, as previously noted, Lavigne's

federal law claims based on events that occurred before October 26, 2010, and state law

claims based on events that occurred before January 24, 2011, are time-barred. Thus,

Lavigne's federal law and state law disparate compensation claims based on these

events are **DISMISSED**.

### ii. Cajun Deep's Failure to Compensate Lavigne at the Rate of a Superintendent

In his Complaint, Lavigne alleges that he was "consistently and discriminatorily

overlooked and/or denied promotion to and the pay rate of superintendent when [he]

had been acting and performing very satisfactorily in that capacity on numerous projects." (Doc. 1, p. 3.) Lavigne's Complaint fails to identify the dates Cajun Deep allegedly failed to compensate him at the rate of a Superintendent; nor does Lavigne identify such dates in his memoranda in opposition. However, a review of record indicates that Lavigne was designated as a Superintendent for the following jobs on the following dates[11]:

| Job No. | Date(s) |
|---------|---------|
| 10-534 | November 9, 2009 |
| 10-543 | March 5, 2010 |
| 10-575 | March 26, 2010 |
| 10-582 | April 12, 2010 |
| 10-609 | August 11, 2010 |
| 11-500 | October 13, 2010 through November 5, 2010 |
| 11-527 | January 27, 2011 |

As noted above, Lavigne's federal law claims based on events that occurred before October 26, 2010, and state law claims based on events that occurred before January 24, 2011, are time-barred. Thus, Lavigne's federal law disparate compensation claim based job numbers 10-534, 10-543, 10-575, 10-582, and 10-609 is

---

[11] Lavigne also contends that he was designated as Superintendent for job numbers 10-529, 11-151, and 11-514. However, Lavigne failed to identify or provide evidence of such jobs or the relevant dates. While it is not clear from Lavigne's memoranda in opposition, it appears Lavigne further contends that Cajun Deep's motion should be denied because it failed to produce such documents to him, as ordered by the United States Magistrate Judge. A review of the record reveals, however, that Lavigne failed to file any motion in response to Cajun Deep's failure to produce. *See* Fed.R.Civ.P. 7(b). Accordingly, any disparate compensation claims based on job numbers 10-529, 11-151, and 11-514 are **DISMISSED**.

**DISMISSED**. Further, Lavigne's state law disparate compensation claim based job numbers 10-534, 10-543, 10-575, 10-582, 10-609, and 11-500 is **DISMISSED**.

Accordingly, Lavigne's remaining federal law disparate compensation claim is limited to job numbers 11-500 and 11-527, and Lavigne's remaining state law disparate compensation claim is limited to job number 11-527.

In opposition to the motion, Lavigne argues that, despite performing the duties of a Superintendent, he was paid at the rate of a Drill Shaft Foreman, and not at the rate of a Superintendent. Lavigne further contends that Cajun Deeps's internal documents identify Lavigne as the "Project Superintendent" for job numbers 11-500 and 11-527. Yet, unlike white employees who served at the "Project Superintendent," Lavigne was paid at the rate of a Drill Shaft Foreman, and not at the rate of a Superintendent.

In support of the motion, Cajun Deep argues that Lavigne's disparate pay claim based on the above listed job numbers must be dismissed because he failed to point to evidence to establish that he requested to be paid as a Superintendent.[12] Cajun Deep further argues that Lavigne's claim must be dismissed because he has failed to point to sufficient evidence to establish that any white Drill Shaft Foreman were paid as Superintendents. However, as noted above, to state a prima facie claim for disparate compensation, a plaintiff must show that he was a member of a protected class and was

---

[12] Cajun Deep failed to cite to any authority to support its argument that a plaintiff must request additional compensation for supervisory work. Rather, it is axiomatic that a person who takes on supervisory job responsibilities will receive additional compensation for taking on those added responsibilities.

paid less than a non-member for substantially the same job responsibilities. *Goring*, 414 Fed. Appx. at 633.

In support of his argument, Lavigne submitted copies of Cajun Deep's pre-task plan forms, work tickets, daily inspection forms, and final completion acceptance forms for job numbers 11-500 and 11-527. (Docs. 85-2, pp. 137-150, Doc. 85-3, pp. 1- 125, 156-157.) A review of the documents reveals that Lavigne was, in fact, identified as the "Project Superintendent" for job numbers 11-500 and 11-527, and signed many of the forms. Based on the evidence in the record, the Court concludes that Lavigne has pointed to sufficient evidence to create a genuine issue of material fact as to whether he was paid less than white Superintendents, despite being given substantially the same job responsibilities as those employees. Accordingly, Cajun Deep's request that the Court dismiss Lavigne's disparate compensation claims based on job numbers 11-500 and 11-527 is **DENIED**.

### 3. Lavigne's Failure to Promote Claims

In his Complaint, Lavigne alleges that he was "consistently and discriminatorily overlooked and/or denied promotion to and the pay rate of superintendent when [he] had been acting and performing very satisfactorily in that capacity on numerous projects." (Doc. 1, p. 3.) Lavigne's Complaint fails to identify the date(s) Cajun Deep allegedly failed to promote Lavigne to the position of Superintendent.

In support of his memoranda in opposition, Lavigne points to his November 11, 2013 deposition, in which he testified that in "late 2009, early January 2010" his immediate supervisor told him that he would be promoted to the position of

Superintendent. (Doc. 52-4, pp. 7-8.) According to Lavigne, he was denied the promotion in January 2010. (Doc. 52-4, pp. 7-8.)

Although it is not entirely clear from Lavigne's memoranda in opposition, it appears Lavigne also argues that Cajun Deep unlawfully denied him promotional opportunities when it hired white males as Superintendents on September 11, 2008, November 16, 2009, and January 21, 2011. (Doc. 85, pp. 4-5, 8.)

As previously noted, Lavigne's federal law claims based on events that occurred before October 26, 2010, and state law claims based on events that occurred before January 24, 2011, are time-barred. Thus, Lavigne's federal law failure to promote claim based on Cajun Deep's failure to promote Lavigne to the position of Superintendent on September 11, 2008 and November 16, 2009 and in January 2010 is **DISMISSED**. Further, Lavigne's state law failure to promote claim based on Cajun Deep's failure to promote Lavigne to the position of Superintendent on September 11, 2008, November 16, 2009, and January 21, 2011, and in January 2010 is also **DISMISSED**.

Accordingly, Lavigne's remaining federal law failure to promote claim is limited to Cajun Deep's failure to promote Lavigne to the position of Superintendent on January 21, 2011.

A plaintiff asserting racial discrimination for failure to promote establishes a prima facie case by satisfying the following conditions: "(1) the employee is a member of the protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; (4) the employer continued to seek applicants with the

plaintiff's qualifications." *Celestine*, 266 F.3d at 354-55. The plaintiff's failure to apply for the disputed promotion will bar a failure to promote claim absent a showing that such an application would have been a futile gesture. *Shackelford*, 190 F.3d at 406; *see also Grice v. FMC Techs. Inc.*, 216 F. Appx. 401, 406 (5th Cir. 2007) (finding no prima facie showing of "failure to promote" where employee failed to apply for the promotion at issue).

Here, Lavigne has failed to point to any evidence that he applied for the Superintendent position in January 2011. Further, he has failed to allege that his application for and/or efforts to obtain the promotion would have been a futile gesture. As such, Lavigne's failure to apply is fatal to his failure to promote claim. *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 316 (5th Cir. 2001) ("[S]ummary judgment is appropriate if the nonmovant fails to establish facts supporting an essential element of his prima facie claim.") Accordingly, Lavigne's remaining failure to promote claim is **DISMISSED**.

### 4. Lavigne's Wrongful Termination Claims

In his Complaint, Lavigne alleges that Cajun Deep violated Title VII and the Louisiana Employment Discrimination Law when it terminated his employment on March 22, 2011. Specifically, Lavigne alleges that he was "wrongfully terminated . . . on March 22, 2011, allegedly, for violations of company policies." (Doc. 1, p. 2.) Lavigne further alleges that he was "cited for a policy violation arising from a review of [his] motor vehicle records as kept by the Louisiana Department of Public [S]afety" while "[w]hite males with similar or worse records and/or who otherwise had accidents

29

involving personal and company vehicles were not held in violation of company policy."

(Doc. 1, p. 3.)

As noted above, to establish a prima facie case of wrongful termination Lavigne must establish that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, the other similarly situated employees were treated more favorably, or that he was otherwise terminated because of his race. *Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009).

In support of its motion, Cajun Deep concedes that Lavigne has met the first three elements of the prima facie case.[13] Accordingly the only remaining issue is whether Lavigne has pointed to sufficient evidence to establish that he was replaced by someone outside the protected class, that other similarly situated employees were treated more favorably, or that he was otherwise terminated because of his race.

In support of its motion, Cajun Deep submitted what appears to be personnel documents establishing that Lavigne was replaced by Charles Nelson (African American male) on April 13, 2011. (Doc. 86-1, p 8.) Indeed, Lavigne concedes in the

_____

[13] According to Cajun Deep, it disqualified Lavigne from driving company provided vehicles for suppressing three motor vehicle moving violations, in violation of Cajun Deep's Motor Vehicle Policy. Cajun Deep contends that because Lavigne was disqualified from driving company provided vehicles, he could no longer operate equipment. According to Cajun Deep, Lavigne was also disqualified from operating equipment because he violated Cajun Deep's Motor Vehicle Policy while on "operator probation" for striking the girder of the southbound I-310 bridge with the boom of an excavator on February 7, 2011. Cajun Deep contends that because Lavigne was disqualified from operating equipment, he could not perform his job duties, and thus, was terminated. (Doc. 46-3.) Lavigne contends that he did not violate Cajun Deep's Motor Vehicle Policy. According to Lavigne, he properly disclosed the two motor vehicle moving violations to his supervisors. Lavigne further contends that the third purported motor vehicle moving violation was not a moving violation subject to Cajun Deep's Motor Vehicle Policy. (Docs. 52, 85.)

testimonial evidence submitted by him that the white male who he alleges replaced him was not promoted to Drill Shaft Foreman until "[a]pproximately one year following the termination of Terrance Lavigne." (Doc. 52-8, p. 2.) Accordingly, the Court finds that Lavigne has failed to establish that he was replaced by someone outside the protected class.

In further support of its motion, Cajun Deep argues that Lavigne has failed to identify similarly situated employees were treated more favorably.

In opposition, Lavigne identifies two white male employees who, according to Lavigne, "were allowed to continue driving semi-trucks even though their company driver's card had expired, placing them in violation of the company policy." (Doc. 52, p. 24.) However, this assertion alone, without further evidence, is insufficient to establish that Lavigne was treated less favorably than a similarly situated employee outside of his protected class. While the Court notes that the Fifth Circuits' "nearly identical" standard is not synonymous with "identical," Lavigne presents no evidence regarding the comparators' job titles, job responsibilities (i.e., whether their job position required them to operate equipment, work and disciplinary history (i.e., whether they were also on operator probation when they allegedly violated Cajun Deep's Motor Vehicle Policy), or other information that would indicate that they were similarly situated.

Nonetheless, Lavigne contends that the evidence in the record establishes that he was terminated because he is African-American. In support of his argument, Lavigne points to his November 11, 2013 deposition, in which he testified that three

months prior to his termination, Lavigne reported to his supervisor that a white male employee, who was hired as a Superintendent, referred to Lavigne and his brother, Romell Lavigne, as "boys."[14]  (Doc. 52-3, pp. 139-142.)  Lavigne also points to his December 17, 2013 deposition, in which he testified that two white male employees, who worked as Superintendents, told him that he would never be promoted to a Superintendent because he is "black." (Doc. 52-4, 32-36.) However, Lavigne failed to submit any evidence that the employees who made the alleged comments, or the employee to whom he reported the alleged comments, were formal decision makers or in a position to influence the decision to terminate Lavigne.

Discriminatory remarks may be taken in account "even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577-78 (5th Cir. 2003). However, even assuming *arguendo* that the alleged comments were related to Lavigne's termination, this sole piece of evidence is insufficient to create a genuine issue of material fact. *See Palasota*, 342 F.3d at 577 (stating that a comment is not evidence of discrimination if it is the sole proof of pretext).

Although Lavigne may sincerely believe that his termination was discriminatory, the Fifth Circuit has explained that "a subjective belief of discrimination, however genuine [may not] be the basis of judicial belief." *Lawrence*

---

[14] While it is not clear from Lavigne's memoranda in opposition, it appears Lavigne also argues that his termination was in retaliation for his reporting such conduct to his supervisor. However, as previously noted, Lavigne's retaliation claims are time-barred.

*v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999). Here, Lavigne has failed to point the Court to sufficient evidence to raise a genuine issue of material fact as to the final element of his prima facie case. Accordingly, Lavigne's federal law and state law wrongful termination claims are **DISMISSED**.

## V.  Conclusion

Accordingly,

**IT IS ORDERED** that **Defendant Cajun Deep Foundations LLC's Motion for Summary Judgment (Doc. 46)** is **GRANTED IN PART** and **DENIED IN PART**.

- Cajun Deep's request that the Court dismiss Lavigne's wrongful termination claims as time-barred is **DENIED**.

- Cajun Deep's request that the Court dismiss Lavigne's retaliation claims as time-barred is **GRANTED**. Accordingly, Lavigne's federal law and state law retaliation claims are **DISMISSED**.

- Cajun Deep's request that the Court dismiss the federal law and state law claims alleged by Lavigne in his Complaint on the basis that Lavigne failed to exhaust his administrative remedies is **DENIED**.

- Cajun Deep's request that the Court dismiss the federal law and state law claims alleged by Lavigne in his Complaint on the basis that such claims are time-barred is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Lavigne's federal law claims based on events that

33

occurred before October 26, 2010, and state law claims based on events that occurred before January 24, 2011 are **DISMISSED**.

- Cajun Deep's request that the Court dismiss Lavigne's disparate treatment claims is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Lavigne's disparate treatment claim based on his three-day suspension for working near an open excavation without wearing a harness is **DISMISSED**. Lavigne's disparate treatment claim based on Cajun Deep's requirement that Lavigne undergo drug testing after lavigne struck the girder of the southbound I-310 bridge with the boom of an excavator is **DISMISSED**. All other disparate treatment claims remain issues for trial.

- Cajun Deep's request that the Court dismiss Lavigne's disparate compensation claims is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Lavigne's federal law disparate compensation claims based job numbers 10-529, 10-534, 10-543, 10-575, 10-582, 10-609, 11-151, and 11-514, and state law disparate compensation based job numbers 10-529, 10-534, 10-543, 10-575, 10-582, 10-609, 11-500, 11-151, and 11-514 are **DISMISSED**. All other disparate compensation claims remain issues for trial.

- Cajun Deep's request that the Court dismiss Lavigne's failure to promote claims is **GRANTED**. Accordingly, Lavigne's federal law and state law failure to promote claims are **DISMISSED**.

- Cajun Deep's request that the Court dismiss Lavigne's wrongful termination claims is **GRANTED**. Accordingly, Lavigne's federal law and state law wrongful termination claims are **DISMISSED**.

Baton Rouge, Louisiana, this ___10th___ day of July, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**