UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TERRANCE J. LAVIGNE                                 CIVIL ACTION

VERSUS

CAJUN DEEP FOUNDATIONS,                 NO.: 12-00441-BAJ-SCR
LLC, ET AL.

## RULING AND ORDER

Before the Court is Plaintiff Terrance Lavigne's ("Lavigne") **Motion for Partial Reconsideration (Doc. 123)**, requesting that this Court reconsider its Ruling and Order denying Lavigne's prior request for emotional damages. Defendant Cajun Deep Foundations, LLC ("Cajun Deep") filed a memorandum in opposition. (Doc. 131). Also before the Court is Cajun Deep's **Motion for Reconsideration (Doc. 124)**, requesting that this Court reconsider its prior Ruling and Order, and enter an order dismissing Lavigne's federal and state disparate compensation claims, and grant any other relief as the Court may deem proper. Lavigne filed a memorandum in opposition. (Doc. 132). For the reasons described herein, the Court **DENIES** Lavigne's Motion for Reconsideration, and **GRANTS** Cajun Deep's Motion for Reconsideration.

I.     **BACKGROUND**

This is an employment discrimination action brought by Lavigne against his former employer, Cajun Deep, pursuant to Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000, *et seq.* ("Title VII") and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.* Lavigne initially filed this lawsuit pro se. (Doc. 1). Lavigne, an African American, alleges that Cajun Deep unlawfully discriminated against him on the basis of his race. More specifically, Lavigne alleged that he was denied promotional opportunities, treated "less favorably than white male employees who violated the same or similar policies," and that he was wrongfully terminated for alleged violations of company policy.[1] (Doc. 1 at pp. 2-3). Accordingly, Lavigne sought "injunctive relief," back pay, damages, attorney's fees, and costs. (Doc. 1 at p. 3). Cajun Deep denied all liability. (Doc. 6).

On July 14, 2014, this matter came before the Court for a non-jury trial on the merits. (Docs. 115, 120). The parties then submitted proposed findings of fact and conclusions of law on August 15, 2014. (Docs. 117, 118, 119). On February 4, 2015, this Court issued a Ruling and Order finding that Lavigne had proven by a preponderance of the evidence that Cajun Deep paid him less than similarly situated non-African American employees for substantially the same job responsibilities, in violation of Title VII. (Doc. 122). The Court further found that Lavigne failed to prove by a preponderance of the evidence that Cajun Deep treated him worse than similarly situated non-African American employees following an

---

[1] At the outset, the Court is compelled to note that Lavigne did not file a failure to promote claim. Though the Court will not speculate as to the merits of such a claim, much of the testimony adduced appeared to be aimed at proving such a claim. Indeed, even in his opposition to the instant motion, Lavigne argues that he was "more qualified than the other non-African-American employees (Seth Gillen, Paul Ladner, Will Rome, Jimmy Boland, and Jonathan Sharp) who occupied the position of Superintendent, and actually performed the duties of the Superintendent position." (Doc. 132 at p. 3). However, the Court does not see how Lavigne's subjective impression of his performance or superior qualifications is relevant to his disparate compensation claim.

excavator incident on February 7, 2011. (*Id.*). The instant motions were filed shortly thereafter.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). However, Federal Rule of Civil Procedure ("Rule") 59(e) provides that a party may file "[a] motion to alter or amend a judgment [within] 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e); *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Both Lavigne and Cajun Deep's motions were filed within this twenty-eight day deadline day. Accordingly, the Court will treat both parties' motions as Rule 59(e) motions to alter or amend a judgment.

The United States Court of Appeals for the Fifth Circuit has explained Rule 59(e)'s purpose and proper application as follows:

> A Rule 59(e) motion calls into question the correctness of a judgment. This Court has held that *such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.* Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (emphasis added; quotation marks, citations, and alterations omitted).

III. **DISCUSSION**

   A.   **Cajun Deep's Motion to Reconsider**

Cajun Deep contends that this Court committed manifest error of law in concluding that Lavigne was similarly situated to Superintendents, and ignoring that other Drill Shaft Foreman were more appropriate comparators. (Doc. 124-1 at pp. 5-9). Cajun Deep further avers that the Court committed manifest error by ruling in Lavigne's favor absent a finding of intentional discrimination by a preponderance of the evidence. (Doc. 124-1 at pp. 9-12). In opposition, Lavigne argues that Cajun Deep's motion is an attempt to "relitigat[e] the issues that this Honorable Court has already ruled upon," and thus, should be denied. (Doc. 132 at p. 1).

To state a prima facie claim for disparate compensation, Lavigne had to show that: (1) "he was a member of a protected class," and (2) "he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). To meet this burden, Lavigne was required to "show that his circumstances [were] nearly identical to those of a better-paid employee who [was] not a member of the protected class." *Id.* at 523 (citation and internal quotation marks omitted). In making its assessment, the Court must ascertain whether the record as a whole contains sufficient evidence to support a finding of unlawful discrimination against the plaintiff. *Id.* At all times, the burden of proof rests with the plaintiff. *See Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1249 (5th Cir. 1995).

In light of Cajun Deep's arguments, and upon further review, the Court finds that Lavigne failed to meet his burden of proof at trial. In so finding, the Court agrees with Cajun Deep that the Court previously erred in using Superintendents as Lavigne's comparators, instead of other Foreman who, like Lavigne, occasionally performed the duties of Superintendents on drill-only jobs.

Testimony adduced at trial confirmed that other Caucasian Drill Shaft Foreman, specifically Horace Lagrow ("Lagrow") and Jonathan Sharp ("Sharp"), also performed the duties of Superintendents on drill-only jobs, while holding the title of Foreman, and thus, being paid as hourly employees. Indeed, Sharp testified that it was common practice to place Foremen in supervisory roles prior to being promoted to a salaried Superintendent. (Tr. II at 34:3-25). With respect to his own experience, Sharp stated that he was paid as an hourly employee for two years prior to being promoted to the position of salaried Superintendent despite leading drill-only jobs during that time. (Tr. II at 34:11-22). In leading those jobs, Sharp performed duties akin to those that Lavigne performed on jobs 11-500 and 11-527, such as filling out expense reports, and other "paperwork," and using the equivalent of a company cell phone. (Tr. II at 39:4-20). He further confirmed that he never received Superintendent's pay until Cajun Deep actually promoted him to the rank of Superintendent. (Tr. II at 34:23-25).

With respect to Lagrow, who was a Foreman at the same time as Lavigne, Superintendent Gene Landry ("Landry") testified that Lagrow, like Lavigne, was "sent out" to lead drill-only jobs while still a Foreman. (Tr. I at 299:18-21). In those

5

jobs, Lagrow performed the same duties that Lavigne performed on drill-only jobs. (Tr. I at 299:18-21). More specifically, Landry stated that Lagrow performed jobs of a similar size to Jobs 11-500 and 11-527 in terms of "number of shafts and time frames," and coordinated employees on those jobs as Lavigne did. (Tr. I at 307:21-308:10). Both Lagrow and Lavigne were paid as Drill Shaft Foreman for those duties. (Tr. I at 299:22-24). Like Lavigne, Lagrow was never promoted to Superintendent. (Tr. I at 299:16-17). Lavigne's own testimony corroborated his similarity to Lagrow, although Lavigne did not know whether Lagrow filled out expense reports, time sheets, or was issued a company cell phone.[2] (Tr. I at 74:11-24). In addition, Landry testified that other individuals served as "lead man" on drill-only jobs, though he could not recall specific names. (Tr. I at 301:6). Like Lagrow and Sharp, those "lead" men were Caucasian, and, similarly, were not paid at the rate of a Superintendent. (Tr. I at 301:6-12).

The Court finds further support in its conclusion given that drill-and-pour jobs required additional responsibilities as compared to drill-only jobs for which Lavigne served as Superintendent. Testimony at trial generally confirmed that the complex nature of drill-and-pour jobs necessitated the assignment of a full-time, titled Superintendent. (Tr. I at 278:19-21). Stated differently, such jobs required the performance of "full duties." (Tr. I at 279:5-8). Drill-only jobs, by comparison, were frequently led by Foreman who were temporarily designated Superintendents.

---

[2] It is also worth noting that Lavigne could not confirm whether the other Foreman at the time, David Carter ("Carter"), performed Superintendent duties on any jobs. Instead, Lavigne merely testified that he personally never witnessed Carter perform Superintendent duties on the jobs they worked together. (Tr. I 73:23-74:6).

6

(Tr. I at 278:19-21). Thus, with respect to Superintendents, all but one regularly performed drill-and-pour jobs almost exclusively. The only consistent exception to these job assignments was Jimmy Boland ("Boland"). However, the Court finds that Boland's circumstances[3] are sufficiently unique to render him an improper comparator. (Tr. I at 283:3-12 and 304:7-13).

Finally, regarding the specific duties completed by Lavigne, as compared to Superintendents, the Court finds several other compelling differences worth noting. First, one of the key duties of Superintendents that was repeatedly cited by several Cajun Deep employees was handling payroll. Though Lavigne testified that he was responsible for employee time sheets and per diem expenses, Lavigne's reports were checked and approved by another employee. (Tr. I at 297:6-9; 297:16-17). Other Superintendents' expense reports and time sheets, including those of drill-only Superintendent Boland were neither checked nor approved by another Cajun Deep employee. (Tr. I at 297:10-15, 313:16-21). Second, Landry, a tenured Superintendent, testified he did "not necessarily" believe that Lavigne performed the full duties of a Superintendent on Job 11-500, and he was unaware of any jobs on which Lavigne worked as a "full-duty" Superintendent. (Tr. I at 278:15-17, 279:9-11). When pressed to specify which duties Lavigne did not perform, Landry stated that, to his knowledge, Lavigne never "called" or "coordinated" concrete, a task which was only necessary on drill-and-pour jobs. (Tr. I at 279:25-280:14). In addition, Lavigne consistently testified that one of the duties he performed as

---

[3] More specifically, Landry testified that Boland had almost forty years of experience in the industry. (Tr. I at 304:7-10). Thus, Boland's extensive experience renders him an improper comparator.

7

Superintendent was completing pre-task forms. However, Sharp testified that "most of the time the Foreman handles the pre-task [forms]." (Tr. II at 9:16-17). Sharp also testified that Lavigne shared Superintendent duty with another employee, Larry Thibodeaux, for Job 11-500, which Lavigne did not refute. (Tr. II at 13:19-23). For these reasons, the Court finds that Lavigne's circumstances were not "nearly identical" to those of Cajun Deep's Superintendents; instead, his proper comparators were other Foreman who also performed Superintendent duties on drill-only jobs.

A few additional collateral points warrant discussion. At trial, Lavigne stressed that he was provided a company cell phone and Superintendent's manual. However, the Court finds significant that these items were provided to Lavigne upon his promotion to Foreman in June of 2009. Had such items been reserved for only Superintendents, as Lavigne suggested, it seems curious that Lavigne would have been given them in conjunction with his promotion to Foreman. More importantly, however, Lavigne could not conclusively confirm that other Foreman at the time, Lagrow and Carter, were not given cell phones or manuals. He merely stated that he worked with Lagrow and Carter often, and never saw either with a manual or cell phone. (Tr. I at 61:9-62:35). In addition, Landry testified about a group of employees in the Elite Class Program ("Program"), which was designed by Cajun Deep "to try and promote from within, to build a Superintendent volume from within." (Tr. I at 262:14-17). The Program contained roughly fifteen to twenty employees, all of whom were given Superintendent manuals. Landry testified that

8

the purpose of providing the manuals was "to begin training [the employees in the Program] to be Superintendents."[4] (Tr. II at 284:11-13). Thus, the Court finds that Lavigne's receipt of a Superintendent's manual lends no support to his discriminatory compensation claims.

Next, the Court notes that Cajun Deep's internal documents identifying Lavigne as the "Project Superintendent" for job numbers 11-500 and 11-527 are not dispositive here. Landry's testimony suggested that the designation of Superintendent simply signified the "lead man" on particular jobs. (Tr. I at 274:24-275:2). Therefore, the specific duties performed and the existence of other employees with identical titles performing nearly identical tasks are what govern here.

Finally, the Court agrees with Cajun Deep that even if Superintendents are used as Lavigne's comparators, Lavigne failed to prove that he was paid less than similarly situated non-African American employees *because of* his race. (Doc. 124-1 at pp. 11-12). Lavigne testified that two Superintendents, Sharp and Seth Gillen ("Gillen") told Lavigne that he would never be a Superintendent because he was black, a statement which Sharp denies making. (*See* Tr. I at 99:7-11, 101:2-9, 110:1-15; Tr. II at 20:24-3). Even accepting that such statements were made, Lavigne did not present any evidence to suggest that either Sharp or Gillen was responsible for determining his wages or position in the company. To the contrary, Lavigne testified that Chris Jacob, the Drill Shaft Manager, was the ultimate decision

---

[4] Landry was unsure if anyone from the Program was ever promoted to Superintendent except Benjie Ficklin ("Ficklin"). (Tr. I at 317:1-318:1). Landry did not know how long Ficklin had been with the company prior to being promoted.

maker regarding promotions, and his reason for not promoting Lavigne to Superintendent was that Lavigne "wasn't ready." (Tr. I at 90:10-91:5, 268:19-269:8). Landry, too, felt Lavigne "needed some time" and "more experience" prior to being promoted to Superintendent. (Tr. I at 269:6-8, 303:16-19). Thus, Lavigne failed to put forth any evidence from which to reasonably infer discrimination.

Lavigne also failed to meet his burden to produce sufficient circumstantial evidence from which to infer a discriminatory motive. There mere fact that there had never been an African-American Superintendent during Lavigne's tenure in the Drilling Division of Cajun Deep is simply insufficient. (Tr. I at 80:15-18, 265:8-11; Tr. II at 21:4-7, 64:7-11). Furthermore, the Court is satisfied that Cajun Deep offered several justifications for the pay disparity. First, all employees, regardless of their race, were paid pursuant to their titles, not their particular duties on a particular job. Though this is not dispositive in a Title VII disparate compensation analysis, it is relevant here. As a whole, the evidence demonstrates that Cajun Deep's practice was to occasionally use non-Superintendent Foreman in Superintendent functions on drill-only jobs. Indeed, the evidence established that this was company practice even before Cajun Deep promoted Lavigne to Foreman. Furthermore, the Court notes that the evidence in this case is limited to just two jobs. Though there was testimony that Lavigne served as a Superintendent on other drill-only jobs, Lavigne did not offer any evidence to delineate how many jobs he functioned as a Superintendent as compared to the total number of jobs worked by him. Given this, it is illogical to compare Lavigne to full-time Superintendents

who exclusively act as Superintendents, and work almost exclusively drill-and-pour jobs.

Because Lavigne failed to establish that he was paid less than members of a non-protected class for work requiring substantially the same responsibility, he has failed to carry his burden on his discriminatory compensation claim.

### B. Lavigne's Motion to Reconsider

Because the Court now vacates its prior ruling awarding Lavigne damages, consideration of Lavigne's motion regarding emotional damages is no longer necessary. Accordingly, the motion is **DENIED**.

## IV. CONCLUSION

**IT IS ORDERED** that Cajun Deep's Motion for Reconsideration of the February 4, 2015 Ruling and Order (Doc. 124) is **GRANTED**.

**IT IS FURTHER ORDERED** that this Court's Ruling and Order of February 4, 2015 (Doc. 122) is **VACATED IN PART**.

**IT IS FURTHER ORDERED, ADJUDGED,** and **DECREED** that **JUDGMENT** is hereby rendered **IN FAVOR OF** Defendant Cajun Deep Foundations, LLC and **AGAINST** Plaintiff Terrance J. Lavigne.

Baton Rouge, Louisiana, this 17th day of July, 2015.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA